# THE FIRST NATIONAL BANK OF MADISON, WISCONSIN,

## *v.*

# JAMES B. HART.

1. PLEADING—*recovery under a general indebitatus count, or whether the plaintiff must declare specially.* Where an agreement has been completely performed by the party who was to render services thereunder, and there is nothing special in the contract in relation to the time or manner of payment, or the credit, if any, has expired, then there is a duty upon the other party to pay the stipulated price, to recover which the party entitled is not required to declare specially, but a general *indebitatus assumpsit* will lie.

2. SAME—*to recover a reward.* So where a certain sum was offered as a reward for the discovery, arrest and conviction of a forger, and the recovery of the money obtained by him, and a person performed such services as led to that result, and entitled him to the reward, it was held, he could recover the same under a general *indebitatus* count.

3. REWARD—*who may recover the same.* A bank having paid out a large sum of money upon forged drafts, offered a reward, through the medium of a circular addressed "to any bank officer or police detective," for the detection and conviction of the forger and the recovery of the money. A person who was neither a "bank officer" nor a "police detective," believing he had discovered the criminal, communicated his suspicions to an officer of the bank, by letter, saying, if the person turned out to be the guilty party he should claim the reward. The bank officer responded, enclosed one of the circulars offering the reward, advised his informant "to keep quiet, but a close watch," and that he would send a detective to him. The detective was sent, and the bank officer also went, and both communicated personally with their informant, and, through information derived from him, the suspected person was arrested and convicted, and most of the money recovered: *Held,* the person thus instrumental in accomplishing the purpose for which the reward was offered, his services being accepted and availed of by those offering it, was entitled to the reward, although he was not embraced in the description of persons to whom it was originally proposed.

APPEAL from the Superior Court of Chicago; the Hon. WILLIAM A. PORTER, Judge, presiding.

This was an action of *indebitatus assumpsit,* brought in the court below by Hart against the First National Bank of

Madison, Wisconsin, to recover the amount of a reward offered by the defendant for the arrest and conviction of a party who had drawn a large sum of money from the bank upon forged drafts, and for the recovery of the money so obtained.

The reward had been offered in a circular, as follows:

(PRIVATE.)

$2500 REWARD.

FIRST NATIONAL BANK, MADISON, WIS., }
*August* 26, 1867. }

*To any Bank Officer or Police Detective:*

SIR: On the twentieth instant, a man calling himself A. Burns presented to this bank five drafts, of $3000 each, purporting to be drawn by the First National Bank of Centreville, Iowa, upon the Tenth National Bank of New York, and procured thereon $7000, leaving the balance (8000) to credit.

His mode of operating here was to gain the confidence of people in a neighboring town by professing to be a Baptist clergyman—formed christian acquaintances, preached twice the preceding Sabbath (the eighteenth) and bargained to purchase property and enter into business there. Thus paving the way, he procured an introduction, and was identified as "Mr. Burns" by those who *thought* they knew him.

The notorious forger, Piper, *alias* Fancher, Clark, King, Farley, etc., having lately been arrested here and taken to Vermont for trial, it is supposed that "Burns" has taken this method of raising bail for his accomplice.

Burns is about 35 years of age, say six feet high, slender built, but broad shoulders, short auburn hair, inclined to curl, whiskers sandy, eyes blue, had a peculiar, long, loping step, and mouth unusually small, teeth good, is inclined to talk considerably. His real name is unknown.

The above reward will be paid for his detection and recovery of the money; or for the detection and conviction of the forger, $500; or for the recovery of the money, $2000; or an equal proportion for any part thereof.

Any information you may get may be addressed to Sheriff of Dane county, Madison, Wisconsin. Should he make his appearance, " shadow " him and telegraph us at once.

N. B. VAN SLYKE, President.

P. S.—We enclose duplicate, which please give to your police officers.

The facts in relation to the arrest and conviction of the forger, and the recovery of a portion of the money obtained by him, through the instrumentality of the plaintiff, are set forth in the opinion of the court.

Upon the trial below, it appeared in evidence that when the officers of the bank were advised by the plaintiff, by letter, that he suspected an individual residing at Tuscola, Illinois, the residence also of the plaintiff, as being the guilty party, they sent a detective, who was already in their employment, to confer with the plaintiff at Tuscola respecting the identity of the suspected person. In that interview, Hart, the plaintiff, told the detective, McDougall, of conversations between himself and Barton, the suspected person, before that time, as bearing upon the question of his guilt, and also what he, the plaintiff, had done in the way of ascertaining the fact of Barton's connection with the crime. These statements, made on that occasion by the plaintiff to McDougall, were permitted to be given in evidence on the trial by the plaintiff, against the objection of the defendant, and this is one of the grounds of error alleged.

The trial resulted in a judgment for the plaintiff for $2128.57, from which the defendant appealed.

Messrs. CLARKSON & VAN SCHAACK, for the appellant.

The plaintiff below was not entitled to recover upon the *indebitatus* count; the declaration should have been special, counting upon the offer of reward made, and containing all the necessary averments to enable the plaintiff to recover from the defendant upon it, as upon an implied promise made to him. ·

But there must have been an original contract made between the plaintiff and defendant to authorize the use of the *indebitatus* count only.

And no such contract, nor any contract, was ever made between appellant and appellee.

The printed and published offer of reward was not addressed to the plaintiff, nor was any promise made in or by it to the plaintiff. There was no privity of contract between the plaintiff and defendant, and the only claim the plaintiff can have against the defendant must be a special one, arising out of a promise not made to him particularly, but limited in its character, and actually addressed to others than the plaintiff, to-wit : to "any bank officer or police detective."

The rule of pleading upon an offer of reward is thus laid down in Chitty : 2 Chitty's Pleadings, side page 257 (note *b*), under form of special count for a reward.

"An advertisement or general promise of a reward to any who will apprehend a felon, or do any other act for the defendant, should not, in general, be declared on as a promise to the particular plaintiff, for there is no privity between the parties themselves." Rol. Abr. 6 M. pl. 1.

But the plaintiff should not recover upon this offer of reward because he did not do that for which the reward was offered ; he only *gave information* which led to that result. It will be observed the wording of the offer of reward is as follows :

"The above reward ($2500) will be paid for his detection and recovery of the money ; or, for the detection and conviction of the forger, $500 ; or for the recovery of the money, $2000 ; or an equal proportion for any part thereof."

Not that $2500 would be paid for information that would lead to his detection and to the recovery of the money, but "for his detection and the recovery of the money." Nor, that $2000 would be paid for information that would lead to the recovery of the money, or an equal proportion for any part thereof, but that $2000 would be paid for the recovery of the money, or an equal proportion for any part thereof.

5—55TH ILL.

Offers of reward are usually made, or at least very frequently, for " information that will lead to detection and recovery of money." This offer of reward is a very different one. Its general promise of reward would not create a claim in favor of one who merely gave information which led to the recovery of money. See *Codding* v. *Inhabitants of Mansfield,* 7 Gray (Mass.) 272 ; *Gardner* v. *The City of Hartford,* 14 Conn. 195 ; *Nall* v. *Proctor,* 3 Metc. (Ky.) 447 ; *Gilmore* v. *Lewis,* 12 Ohio, 281.

Messrs. GOOKINS & ROBERTS, for the appellee.

We think it clear that a recovery could properly be had under the *indebitatus* count, where the reward offered was accepted, acted upon, and the service fully performed. We do not put the construction upon the note quoted from Chitty, that is given by counsel for appellant. The author was not discussing the difference between general and special pleading, but merely giving directions how to form a special count. The offer in the advertisement being general, should not be averred to have been made to the plaintiff. That this was Mr. Chitty's view of the matter is plain from the fact that, at the end of the same precedent, he gives the further direction to " add other counts varying the undertaking according to circumstances, and the common counts for work and labor," etc. This direction to the pleader we think would have been very inappropriate if no recovery could be had under the common counts. The case of *McClure* v. *Wilson,* 43 Ill. 356, seems to be conclusive on that question.

We do not think the authorities cited by appellant's counsel sustain their view, that the plaintiff had not earned, and therefore could not recover, the reward offered, having only *given information* which led to the result desired—the conviction of the forger and the recovery of the money.

The just and sensible rule, laid down by Chief Justice TINDAL, in *Thatcher* v. *England,* 3 Man. Gr. & Scott, 254, (54 E. C. L. 253) seems to be recognized in all the cases where the

precise question now under review has received proper consideration. Thus: " It appears to me that the reward is to be paid to the person who was the original and meritorious cause of the recovery of the property and the conviction of the offender; that is, to the person who first communicated the information which led to both."

We cite, also, *Williams* v. *Carwardine*, 5 C. & P. 566 (24 E. C. L. 711) ; *Symmes* v. *Frazier*, 6 Mass. 344, is a leading case, and quoted as such by SHAW, Chief Justice, in *Freeman* v. *The City of Boston*, 5 Metc. 56 ; *The City Bank* v. *Bangs*, 2 Edw. Ch. 95 ; *Beese* v. *Dyer*, 9 Allen (Mass.) 151.

Mr. JUSTICE McALLISTER delivered the opinion of the Court :

Where the agreement has been completely performed by the party who was to render the services, and there was nothing special in the contract in relation to the time or manner of payment, or the credit, if any, has expired, there is then a duty upon the other party to pay the stipulated price, for which a general *indebitatus assumpsit* will lie. Bull. N. P. 139.

This rule disposes of the objection, that appellee could recover only upon a special count.

In August, 1867, at Madison, Wisconsin, a certain individual obtained of appellant $7000 by means of forged drafts, whereupon appellant caused to be published in circulars an offer of reward, which was, in substance—that $2500 would be paid for the detection of the forger and recovery of the money ; or for the detection and conviction of the forger, $500 ; or for the recovery of the money, $2000 ; or an equal proportion for any part thereof.

The appellee lived at Tuscola, Ill., and about the thirtieth of August, 1867, having seen a full account in the Chicago Times of the forgery, a description of the person and conduct of the forger, together with a notice of the reward offered by the bank, taken from a Madison paper, appellee had his suspicions

at once aroused and fixed upon a person who had been temporarily residing at Tuscola, of the name of Barton. He accumulated facts and circumstances, and, on the thirty-first of the same month, wrote a letter to the officers of the bank, stating his suspicions and the grounds of them, and requesting them so send some one to identify the person, and also stating that if Barton should prove to be the forger, and the money be recovered, he should claim the reward. On the second of September, 1867, he wrote again, giving a more particular statement of the facts and circumstances to support the belief that Barton was the guilty party, and urging them to send at once and arrest him.

To these letters, Geo. A. Mason, the cashier of the bank, replied by letter, bearing date the third of September, 1867, in which he enclosed to appellee the circular aforesaid, offering the reward, and stated: "Our detective will be home (here) to-morrow, and if the information that he is now after corroborates your statements, he will go at once to your place. Keep quiet, but a close watch. I think he will be able to reach your place by Thursday night."

The detective alluded to did come, and after appellee had put him in possession of the facts and circumstances, the latter sent for Mason, who also came directly to appellee, who then had obtained specimens of Barton's hand writing, and ascertained what money Barton had invested there lately in property. Barton proved to be the guilty party, and both his guilt and the use of the money obtained by his crime, were detected primarily and directly through the sagacious efforts of appellee. Barton was arrested, taken to Wisconsin, indicted and convicted. Of the fruits of his crime, $5500 had been invested in a farm in Douglas county, and about $1000 in personal property. The farm, which was estimated at $5500, was conveyed by Barton and wife to Mason, as cashier of the bank, and personal property made over of the value of about $800.

The facts of this case afford a complete answer to all the objections made to the ruling of the court or judgment below.

It appears that there was nothing special in the contract in relation to the time or manner of the payment of the reward, and, consequently, when appellee completely performed, as he unquestionably did, his part of it, the law imposed a duty upon the appellant to pay the stipulated price, for which a general *indebitatus assumpsit* would lie, and the objection, that appellee could recover only upon a special count upon the agreement, is wholly untenable.

The counsel for appellant say, " that it is not pretended that there was any contract made between the appellant and appellee, except such as might be implied from the offer of reward, and this offer of reward, it will be seen, is headed *private*, and addressed ' to any bank officer or police detective.' "

This objection is answered by the facts in evidence. When appellee wrote to the agents of appellant, he stated to them that, if the person he suspected proved to be the guilty party, and the property was recovered, he should claim the reward. What was the reply to this? A letter enclosing to appellee the offer of reward, and telling him their detective would be sent; to " keep quiet, but a close watch." And not only this, but in a very short time the cashier went to Tuscola, and had direct communication with him on the subject, and appropriated the proceeds of the discovery. Now does it lie with the appellant to say, we did not make this offer of reward to appellee, because our circular is, in terms, addressed to bank officers and police detectives, and he is neither? When appellee said, in his letter, that if Barton proved to be the forger, and the property was recovered, he should claim the reward, why did they not then say, unless you are a bank officer or police detective you cannot have the reward? Good faith and fair dealing required them to have so said if they meant any such thing. But, instead of that, they informed him that they would send their detective, and " to keep quiet, but a close watch ;" and to assure him that it would be all right, enclosed him their offer of reward. These letters and acts, followed up, as they were,

by the officers going to appellee and receiving the information which led to the arrest and conviction of the forger and the recovery of the property, as before mentioned, create a direct privity of contract between the bank and appellee as effectually as if the officers had said to him, and to nobody else, "we have lost $7000 by means of a forgery. Now, we will give you $2500 for the detection of the forger and recovery of the money; or $500 for the detection and conviction of the forger; or $2000 for the recovery of the money, or equal proportion of that sum for any part thereof;" and he had replied, "I accept your proposition," and proceeded at once upon the performance of his contract. Where a person, acting under such an offer of reward, acquires a knowledge of the facts necessary to a detection or discovery of the criminal, and of the things stolen or lost, and has imparted such knowledge with the intent and for the purpose of bringing about a recovery or restoration of the property, and the arrest and conviction of the criminal; taking upon himself the risk and consequences of a failure, if it fails, and acting with a view to the benefit of the reward if his suspicions and disclosures are well founded and successful, he is, by all the principles of law, justice and fair dealing, entitled to the reward offered, and it would be a reproach upon the administration of justice if he could be defeated of its recovery by objections so purely technical, and not affecting the merits, as are urged in this case.

The evidence fully establishes a cause of action, and the damages were not excessive. Appellee had nothing to do with the amount paid to Cannon for filing a bill. There was no proof that the amount of $500 was a reasonable fee for drafting such a bill, or that any bill was necessary. It appears that Barton voluntarily gave up the property and confessed his guilt, without the necessity of appellee attending court.

We do not deem it necessary to discuss all the questions raised. It was entirely proper for appellee to state to McDougall all the material information he had. Such information is

not hearsay, but original and material evidence. 1 Greenl. Ev. sec. 101. Finding no error in this record affecting the merits of the case, the judgment of the court below must be affirmed.

*Judgment affirmed.*