## James Williams v. West Chicago St. R. R. Co.

94 385
a191s 610

1. REWARDS—*What is a Compliance with an Offer for.*—A person who furnishes information which leads to the arrest and conviction of a criminal, even though he does not personally participate in the actual making of the arrest, is entitled to a reward offered for such arrest and conviction.

Assumpsit, for a reward for the arrest and conviction of a criminal. Error to the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed April 8, 1901.

Statement.—Plaintiff in error brought this suit in assumpsit to recover the amount of a reward offered by the defendant in error for the arrest and conviction of the murderer or murderers of one C. B. Birch. The published offer was in the terms following :

"$5,000 REWARD.
OFFICE WEST CHICAGO STREET RAILROAD COMPANY.
JUNE 24, 1895.

The above reward will be paid by the West Chicago Street Railroad Company for the arrest and conviction of the murderer or murderers of C. B. Birch, who was fatally shot while in discharge of his duty as receiver on the morning of June 23, at the Armitage avenue barn.
C. T. YERKES, Prest."

On the morning of Sunday, June 23, 1895, Birch, an employe of defendant in error, was shot at his place of employment in the Armitage avenue barns of defendant in error.

Plaintiff in error was also an employe of defendant in error, and his duties consisted of going from barn to barn each night to inspect cash registers. In the course of his duties he was, on the night in question, at the Armitage avenue barn, and upon leaving it he saw as he drove away, two men on Campbell avenue just east of the car barns. It was then about two o'clock in the morning of Sunday, and the presence of these men at that place at that hour caused plaintiff in error to look at them carefully. The murder of Birch shortly after two o'clock of that morning led the police authorities to at once issue what is termed a "drag-net order," that is, an order to the various patrolmen to arrest all suspicious characters in their respective districts and bring them to the police stations for examination as to their whereabouts at the time of the crime. Julius Mannow was thus arrested and brought to the station.

Plaintiff in error reported to his superior officer the fact that he had seen two men near the Armitage avenue barn about the time of the murder. He was directed to go to the police authorities and inform them of the fact. He did so, and upon Mannow, who was there under arrest, being shown to him, he identified him as one of the men whom he had seen on the night of the murder. He also gave the officers a description of the other man, and thereafter Joseph Windrath was arrested and plaintiff in error identified him as the other of the two men whom he had seen. The offer of the reward in question was published in the Chicago Tribune upon the morning of June 25, 1895, which was after plaintiff in error had informed the police authorities as to his having seen the two men on the night of the murder and after he had identified Mannow as one of the two and had given a description of the other man; but it was before Windrath had been arrested and identified. Plaintiff in error first read the offer of reward on the

morning of June 25, 1895. The services rendered by plaint-
iff in error in connection with the discovery and arrest of
Mannow and Windrath after he heard of the offer of a
reward, consisted in his identification of the two men, it
being the second time he had identified Mannow and the
first time he had identified Windrath, and testifying before
the coroner's jury to the effect that he had seen these two
men near the Armitage avenue barn on the night and near
the time of the crime. He also testified before the grand
jury and at the trial.

Other information was obtained by the police authorities
shortly after the identification of Mannow and Windrath
by plaintiff in error, and this information led to the fasten-
ing of the crime upon the two men and their subsequent
conviction and execution. It was the testimony of the
witnesses Klatt and Schmitke which constituted the posi-
tive evidence upon which the coroner's jury held the two
men to await the action of the grand jury. It was the
testimony of the same two witnesses which warranted the
grand jury in returning an indictment. Mannow pleaded
guilty to the indictment. Windrath was tried and upon
his trial the testimony of Klatt and Schmitke again was
used to fasten the crime upon the accused.

Before the coroner, before the grand jury and at the
trial of Windrath, plaintiff in error testified, each time, to
the single fact that he had seen the accused upon the night
of the murder and near its time at a place near the Armi-
tage avenue barn. A police officer named Jurs testified
upon the trial of this cause that about two months before
the time of the murder Mannow had narrated to him a plan
for robbing a coal office, in somewhat the manner in which
the Armitage avenue robbery was accomplished, and had
described Windrath as concerned in the plan, and that after
the Armitage avenue robbery and the murder of Birch the
witness at once recalled this fact and suspected Mannow and
Windrath and took steps to cause their arrest. This was
before the information was given by plaintiff in error. In
this testimony Jurs was corroborated by another witness.

When plaintiff in error identified Windrath, Fuller, the general superintendent, said to plaintiff in error, " Now, tell us all you know and we will take care of you." After having testified before the grand jury plaintiff in error asked the general manager of defendant in error, " Is this a *bona fide* reward ? " To which the manager replied, " Yes, Mr. Williams, and all the money is here, and there has not been a cent of it paid out yet." Plaintiff in error then said, " Mr. Parsons, I claim that reward, as I was the one that gave the clew which led to the arrest of these men and their conviction, because I identified these men all the way through." Mr. Parsons replied, " All right."

Afterward the assistant manager, to whom the matter was referred, refused to pay plaintiff in error the amount of the reward, advised him to employ a lawyer, and upon being informed by plaintiff in error that he had secured a lawyer, replied, " All right."

Upon the trial of the cause, after the introduction of the evidence offered by plaintiff and by the defendant, the court peremptorily directed a verdict for the defendant. To review the judgment thereon this writ of error is prosecuted.

J. WARREN PEASE and McGLASSON & BEITLER, attorneys for plaintiff in error.

JOHN A. ROSE and LOUIS BOISOT, JR., attorneys for defendant in error; W. W. GURLEY, of counsel.

MR. JUSTICE SEARS delivered the opinion of the court.

There is some conflict in the authorities as to what is required to comply with the terms of an offer of reward for arrest and conviction of an unknown offender. In the decisions in some of the States it is held that the mere furnishing of information which leads to the arrest and conviction of the offender is a compliance with the terms of such an offer, although the person furnishing the information may do nothing by way of active participation in the making of the arrest or the securing of the conviction

Crawshaw v. Roxbury, 7 Gray (Mass.), 374; Besse v. Dyer, 9 Allen (Mass.), 151; City Bank v. Bangs, 2 Ed. Ch. (N. Y.) 95; Haskell v. Davidson, 91 Me. 488.

In other cases a stricter construction of the terms of the offer has been adhered to, and it has been held, that in the absence of an active participation in the arrest there can be no compliance with the terms of an offer "for arrest and conviction." Juaniata County v. McDonald, 122 Pa. St. 115; Sias v. Hallock, 14 Nev. 332.

There is also a variety of decisions as to whether one who has complied with the terms of such an offer, while he was ignorant of the existence of the offer, can recover. In some cases it has been held that the service, not having been rendered with knowledge of the offer, can not be held to constitute a compliance with or acceptance of the terms of the offer as an agreement. It is so held in Fitch v. Snedaker, 38 N. Y. 248; Howland v. Lounds, 51 N. Y. 604; Stamper v. Temple, 6 Humph. (Tenn.) 113.

And it has been elsewhere held that the fact of knowledge of the offer is immaterial, provided its terms have been complied with, and this construction is, to some extent at least, put upon grounds of public policy. Williams v. Carwardine, 4 Barn. & Ad. 621; Dawkins v. Sappington, 26 Ind. 199; Auditor v. Ballard, 9 Bush. (Ky.) 572; Russell v. Stewart, 44 Vt. 170.

In our State the right to recovery of rewards has been considered in the following cases: Stacy v. State Bank, 4 Scam. 91; First Nat'l Bank v. Hart, 55 Ill. 62; Montgomery v. Robinson, 85 Ill. 174; Hogan v. Stophlet, 179 Ill. 150; C. & A. R. R. Co. v. Sebring, 16 Ill. App. 181; same v. same, 19 Ill. App. 222; Ensminger v. Horn, 70 Ill. App. 605; Swanton v. Ost, 74 Ill. App. 281.

So far as our own courts have passed upon the several questions above indicated, it has been held that a reward offered in part for "detection of the person or persons concerned in the robbery," would be earned, as to such part, by a discovery of the guilty person and communication of such discovery to the person making the offer, without ref-

erence to any arrest or commitment.    But in that case it was held that the fact that the detection had been accomplished through another before the plaintiff had rendered any service, was a bar to recovery.    Stacy v. State Bank, *supra.*

It has also been held that a reward offered for "detection and recovery of money," or for "detection and conviction" is earned by one who furnishes information which enables the authorities by following it up to obtain the evidence necessary for conviction.    First Nat'l Bank v. Hart, *supra.*

In that case the offer was directed "to any bank officer or police detective."    The one furnishing the information and claiming the reward was neither a bank officer nor a police detective.    But the court held that inasmuch as he had acted upon the offer in furnishing the information, and the defendant had accepted the information knowing it was given upon that ground, the defendant became liable to pay the reward.    Justice McAllister, speaking for the court, said:

"Where a person, acting under such an offer of reward, acquires a knowledge of the facts necessary to the detection or discovery of the criminal, and of the things stolen or lost, and has imparted such knowledge with the intent and for the purpose of bringing about a recovery or restoration of the property, and the arrest and conviction of the criminal, taking upon himself the risk and consequences of a failure, if it fails, and acting with a view to the benefit of the reward if his suspicions and disclosures are well founded and successful, he is, by all the principles of law, justice and fair dealing, entitled to the reward offered, and it would be a reproach upon the administration of justice, if it could be defeated of its recovery by objections so purely technical and not affecting the merits, as are urged in this case."

In Montgomery v. Robinson, *supra*, the reward was offered "to any person or persons who shall hereafter pursue and arrest, beyond the limits of this county, any person guilty of stealing any horse," etc.    The offender had been arrested in another State and was held there upon another charge.    The plaintiff procured a requisition, by means of which the offender was returned to this State.    Another

person than the claimant was appointed by the authorities to bring the prisoner back to the county in this State, where he had committed the offense.   The plaintiff took no direct active part in the making of the arrest or the bringing back of the prisoner.   Yet the court held that the terms of the offer had been substantially complied with and that the plaintiff was entitled to the reward.

In Hogan v. Stophlet, *supra*, the offer was "for the apprehension and conviction."   The plaintiff claiming the reward was sheriff, and the arrest was made by one of his deputies.   It was held that there could be no recovery, because it was the duty of the plaintiff to make the arrest by reason of being sheriff of the county, and because he was precluded by the law from asking or receiving "any fee or reward to execute or do his duty as such officer, except such as is or shall be allowed by law."   There was some question as to whether the plaintiff in that case caused the apprehension of the offender upon the charge in connection with which the reward was offered, or upon another and different charge, and the Supreme Court, speaking through Mr. Justice Magruder, said:

"If, therefore, the fact that Howard was arrested upon a charge of burglary and larceny should be held to negative the idea that he was arrested upon a charge of burning the building, then appellant did not secure the apprehension of the guilty party; and, in such case, he would not be entitled to the reward, as the reward was offered both for the apprehension and the conviction."

But the fact that the plaintiff was a sheriff, charged with the duty of making the arrest by reason of his office, is made the controlling ground in the decision.

In C. & A. R. R. v. Sebring, *supra*, it was held that no recovery could be had where the services were rendered in ignorance of the offer.   This court said:

"It seems well established that to entitle a person to a reward, he must show a rendition of the services required, after a knowledge of, and with a view of obtaining, the offered reward."

In Ensminger v. Horn, *supra*, the services rendered by

the plaintiffs were in part rendered before the offer of the reward was known to them, but after knowledge of the offer they went to another town where the accused were confined in order to identify them. The court, following but not citing the Sebring case, said:

"Although Horn and Murphy did not know of the robbery and the reward when a description of the three suspicious looking men who boarded the train was furnished, and would not, therefore, be entitled to the reward for that service, yet their going voluntarily to Taylorville to identify the prisoners and the further assistance they gave Eltzrath in fastening the crime upon them, were all with the view on their part of sharing in the reward. They co-operated with Eltzrath and were certainly as much entitled to the reward as he was."

An award of the amount offered to the two plaintiffs and Eltzrath jointly was approved by the court.

In Swanton v. Ost, *supra*, the offer was for "the arrest" of the offender, and it stated that "information may be sent to Chief of Police, Lake Forest, Ill." The court held that the furnishing of information alone, which led to the arrest, without any further participation in the arrest, would be sufficient to entitle the party so furnishing the information to the reward, citing Crawshaw v. Roxbury, *supra*, City Bank v. Bangs, *supra*, and First Nat'l Bank v. Hart, *supra*.

From all these decisions it is apparent that the rule in this State is that one who furnishes information which leads to arrest and conviction is entitled to a reward offered for arrest and conviction, even though the claimant did not personally participate in the actual making of the arrest. And it seems to be the established rule of this court that the services must be rendered with a knowledge of the offer. This, however, is a question not yet passed upon by the Supreme Court, and is one admitting of much doubt. The authorities supporting the *contra* doctrine, viz., that the service entitles to the reward whether rendered with or without knowledge of the offer, are well reasoned and considerable in number. Measuring the case now presented by

these rules, we are of opinion that the plaintiff in error did not establish any right to a recovery of the reward.

If the information furnished by him had been the means of discovering and arresting and convicting Mannow and Windrath, then, under the authority above considered, we would hold that plaintiff in error was entitled to the reward. And the fact that defendant in error had already paid the reward to another would be of no consequence as affecting the legal rights of plaintiff in error. Nor would we, in that event, regard the fact that plaintiff in error was in the employ of defendant in error when the service was rendered, as impairing his rights. The offer was not limited to persons not in defendant in error's employ. It was general in its application and might be earned as well by an employe as by any other person. C. & A. R. R. Co. v. Sebring, *supra*.

But the difficulty is that the evidence is not such as to warrant the conclusion that the information furnished by plaintiff in error did lead to the arrest and conviction of Mannow and Windrath. Mannow was already under arrest when plaintiff in error first informed the police of his having seen two men near the barn. And the testimony of Jurs, which is uncontradicted, shows that Mannow was already under suspicion by reason of prior statements by him in reference to such robberies as the one committed at the time of the murder. Moreover, this previous statement of Mannow directed suspicion to Windrath. It was the testimony of Klatt and Schmitke which finally fastened the crime upon the accused. It can scarcely be said either that the information given by plaintiff in error led to the discovery of Klatt and Schmitke as witnesses, or that the information led to the arrest and detention of the prisoners until the discovery of Klatt and Schmitke was effected. The information furnished by the plaintiff in error was merely that he had seen two men on the street near the scene and at about the time of the crime. Subsequently he identified Mannow and Windrath as the men so seen by him. But this fact would neither have afforded ground to the police for arresting these men, nor to the coroner's jury

for holding them to the grand jury, nor to the grand jury for returning an indictment. The most that it can be said to have effected was the directing of the attention of the police to these men, and that had already been accomplished by Jurs, and one of the men was in custody before the information was given by plaintiff in error.

The language used by the Supreme Court of Wisconsin in the decision in Austin v. Milwaukee, 24 Wis. 278, is in part applicable to this case. The court said:

"At most, all that the plaintiff could or did do was to furnish the police officers with the names of two suspicious persons, who had been seen in the vicinity when and where the crime was committed. But where were these men in February, when the plaintiff saw Mr. Beck, and what testimony could he produce which would criminate them? He neither knew where they were, nor did he furnish the least particle of evidence which would tend to convict them when found. For the bare facts that they had been seen in the neighborhood on the morning of the murder and were inquiring the way to Milwaukee while in sight of the city, were 'trifles light as air.' They afford of themselves no proof of guilt. * * * The reward was for the arrest and conviction of the perpetrators of the crime. The plaintiff certainly had no knowledge of any fact that would secure a conviction. He took no risk upon himself in the matter; made no effort to obtain further information . in respect to these suspicious persons or confirm his impressions about them; and the authors of the crime would have forever remained a mystery for anything he did, or any knowledge he could impart to the officers. And it was only by the exertions and skill of experienced detectives, acting upon the clue furnished by the plaintiff, that they were finally discovered and brought to justice. Even when the officers found where one of these suspected persons was, they had no evidence against him which would justify an arrest."

It is argued by the learned counsel for plaintiff in error, and with considerable force, that the arrest of Mannow prior to the information furnished by plaintiff in error was an unauthorized and illegal arrest, based upon no complaint or charge and merely upon suspicion. This is all true. The so-called "drag-net" arrests were clearly unwarranted and

Williams v. West Chicago St. R. R. Co.

illegal. But the difficulty is that had the arrest been made upon all the information given by plaintiff in error, which consisted merely of the fact of having seen Mannow and Windrath upon the street, the arrest would then have been equally unauthorized and unwarranted. The one fact known to plaintiff in error and by him imparted to the police authorities, constituted no sufficient ground for charging the crime upon these men. At most, it merely constituted ground for suspicion; and they were already under suspicion.

In the Massachusetts case relied upon by counsel for plaintiff in error, Crawshaw v. Roxbury, *supra*, the instruction approved by the court directed the jury that they might find for the plaintiff " if the facts disclosed by the plaintiff were such as induced the officer who arrested the offender to arrest him, and were material, and had a tendency to produce ultimate conviction, and without them Clark would not have been convicted, unless upon his own subsequent confession." Applying this measurement to the facts in evidence, it is clear that there is here no sufficient showing made. And if the more liberal announcement of the Maine court in Haskell v. Davidson, *supra*, be adopted, it is equally clear that this is not the case of a " person who by reason of the offer is induced to make an investigation and finally obtain possession of sufficient facts to authorize the arrest of an offender and his subsequent conviction for the crime."

We are of opinion that the evidence is insufficient to show any right to recovery in plaintiff in error. Nor do we, in so holding, rely upon the fact that when the information was first given to the authorities plaintiff in error was unaware of any offer of a reward. Whether with knowledge of the reward or without it, the information which plaintiff in error gave to the authorities can not, in our opinion, be said to have led to the arrest and conviction of Mannow and Windrath. Hence we are of opinion that the ruling of the learned trial court in directing the jury to return a verdict for defendant in error was right and that the judgment should be affirmed.