## Kincaid Trust & Savings Bank of Kincaid, Illinois, Appellee, v. G. H. Hawkins, Appellant, and Louis Holloway et al., Appellees.

### Gen. No. 7,677.

1. REWARDS—*when police officers shown not entitled to reward for arrest of criminal.* In proceedings to determine which among several claimants were entitled to a reward offered for information leading to the arrest and conviction of the persons who committed a certain bank robbery in this state, held that two of claimants who, as police officers of Atlanta, Georgia, arrested one of the robbers while acting in the line of their duty before they knew of the reward were not entitled to the reward.

2. EVIDENCE—*presumption as to foreign laws.* The laws of a foreign state, unless averred and proved as facts, are presumed to be the same as in this state.

3. REWARDS—*duty of peace officers as to arresting fugitive from justice as affecting right to reward.* Under Cahill's Ill. St. ch. 60, ¶ 3, it is the duty of any officer of the law to arrest a fugitive from justice even before the arrival of the governor's warrant when a proper warrant is placed in his hands and where officers of another state arrested a fugitive from this state without a warrant that fact did not change the nature of their official duty or constitute the arrest one made in a private capacity so as to entitle arresting officer to reward.

Kincaid Tr. & Sav. Bk. v. Hawkins et al., 234 Ill. App. 64.

4. REWARDS—*knowledge of existence of reward as essential to* ✓ *claim thereto.* A reward cannot be recovered by one who at the time he performed the services did not know that a reward had been offered.

5. REWARDS—*when claimant not entitled to reward for arrest of fugitive.* Where the only connection a claimant of an award for information leading to the arrest and conviction of bank robbers had with the apprehension of one of the robbers was that, as a porter on a train, he noticed two men who boarded the train on the night of and not far from the scene of the robbery and later identified the picture of the one who was later apprehended and convicted as one of the men who boarded the train and also identified the prisoner as one of such men at the trial, his information, while doubtless a clue, a suggestion or suspicion which may have been an aid in commencing the search that finally resulted in the apprehension of such robber, was not such information leading to the arrest and conviction of such robber as would entitle him to the reward.

6. REWARDS—*furnishing information as to identity of criminal as sufficient basis for claim to reward.* The furnishing of information as to the identity of a criminal does not of itself entitle one to a reward offered for the apprehension and conviction of the guilty party unless such information leads to the arrest and conviction.

7. REWARDS—*sufficiency of information given by claimant as to identity of criminal as basis for claim to reward.* Where no arrest of a robber was made on the strength of the information given by a claimant of a reward offered for information leading to the arrest and conviction of such robber and such information would not have been sufficient upon which a complaint could have been founded such claimant was not entitled to the reward.

8. REWARDS—*when claimant entitled to reward for arrest and conviction of criminal.* Where a clerk in an express office in another state, having seen the picture of a man suspected of participation in a robbery in this state, for the arrest of whom a reward was offered, recognized such robber when he claimed a suit case, ascertained that he was also expecting a trunk by express and notified the authorities and set the trap by which the officers were given the opportunity to arrest him when he called for the trunk, and such robber was extradited and convicted he was entitled to the reward.

Appeal by defendant from the Circuit Court of Christian county; the Hon. WILLIAM B. WRIGHT, Judge, presiding. Heard in this court at the October term, 1923. Reversed and remanded with directions. Opinion filed March 8, 1924.

LESLIE J. TAYLOR, for appellant.

ARTHUR YOCKEY & ELLEN M. YOCKEY, for appellees.
C. A. PRATER, for Elwood Long, appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the
court.

This is an appeal perfected by G. H. Hawkins from
the decree of the circuit court of Christian county, en-
tered in a bill of interpleader proceedings to deter-
mine to whom should be paid a certain reward offered
by the appellee, Kincaid Trust & Savings Bank of
Kincaid, Illinois, in the sum of $1,000 for information
leading to the arrest and conviction of those who
robbed its bank.

In this decree, the court found that the appellant
was not entitled to the reward, but that one Elwood
Long was so entitled, and entered an order directing
payment of the said $1,000 reward to Elwood Long.

To reverse this decree, G. H. Hawkins has perfected
this appeal.

The Kincaid Trust & Savings Bank filed a bill of
interpleader making the appellant Hawkins, Elwood
Long, Louis Holloway, C. L. Hamilton and R. L. Hol-
lingsworth, parties defendant, alleging that they
claimed to be entitled to the reward, and that the
complainant could not safely elect to whom the reward
was due and owing. Also, it alleged that G. H. Haw-
kins had filed suit, or was threatening to file suit; set
forth the usual formal allegations, and offered to pay
the $1,000 into court to be paid under the directions of
the court. All of the parties waived process, and en-
tered their appearance.

Elwood Long and Louis Holloway filed what might
be termed a joint and several answer, claiming, in sub-
stance, that Long, to whom the court decreed the pay-
ment of the reward, had furnished the sheriff, through
Holloway, with evidence which led to the identification

Kincaid Tr. & Sav. Bk. v. Hawkins et al., 234 Ill. App. 64.

of Timothy L. Lotsey, one of the robbers; that Long aided in the identification of Lotsey, and appeared as a witness and aided in the conviction.

C. L. Hamilton and R. L. Hollingsworth filed what is termed a joint and several answer, in which they alleged that they, individually and jointly, furnished information leading to the apprehension and conviction of James Lotsey, alias Stuttering Jimmy, and that they, individually and jointly, arrested him in the City of Atlanta, in the State of Georgia, on the 10th day of January, A. D. 1922, and procured a search warrant; searched the trunk belonging to Lotsey, found his marriage certificate, some revolvers and burglar tools, and that when first arrested he insisted that he was John J. Ryan, but later admitted he was the party wanted by the officials of Christian county; that they notified the sheriff of Christian county, who took Lotsey to Illinois on the 15th day of January, A. D. 1922; that he was afterwards tried and convicted; that, under the terms of the reward, they were entitled to the same.

Appellant G. H. Hawkins filed his answer alleging, in substance, that Lotsey left the State of Illinois and arrived in the City of Atlanta; that Hawkins, at the time, was an employee of the American Railway Express Company, and was advised of the robbery of complainant's bank and the reward offered; that he had observed photographs, or copies of photographs, in the City of Atlanta, and recognized Lotsey in Atlanta at the time he was traveling under the name of John J. Ryan.

The answer further averred that Hawkins applied to the United States Post Office authorities for assistance, and when Ryan returned to the American Railway Express Company office in the City of Atlanta, the identification was completed and Lotsey was arrested, delivered to the sheriff of Christian county, Illinois, and afterward tried and convicted.

After a trial before the court, heard partly on oral evidence, and as to the claimants, Hawkins, Hollingsworth and Hamilton almost entirely upon depositions, the court entered the decree finding that Elwood Long alone of all the claimants was entitled to the entire reward of $1,000, and directed payment to him by the appellee.

It appears from the evidence that in the fall of 1921 some men robbed the Kincaid Trust & Savings Bank of ninety-five thousand dollars and the robbers escaped. A few days after the robbery, the Kincaid Trust & Savings Bank offered a reward of five thousand dollars for information leading to arrest and conviction of the robbers and one thousand dollars for either one of such robbers.

The robbery occurred on August 13, 1921. The claimant, Elwood Long, was a porter in the employ of the Wabash Railway Company running on the train from St. Louis to Chicago, leaving St. Louis about 9:17 at night. When the train arrived at Litchfield, it was raining and several passengers boarded the train, among others, two men. One wore overalls and the other a gray suit. One had a ticket to Chicago, and the other a ticket to Decatur. This man arranged with the porter to buy him a ticket from Decatur to Chicago. The men then separated, one going in the car ahead, and the other remaining. One of the men was covered with mud, and in the early morning the porter helped him clean up, and the men left the train in Chicago, but before reaching the main depot.

Some days after the robbery, Louis Holloway, who lived in Taylorville, but managed a factory in Granite City, while returning to Taylorville on the train, had a conversation with Long with reference to this robbery. Long advised him of the circumstances of these two men. Holloway made memorandum of the facts, and, at Taylorville, communicated them to the sheriff. Some days later, Holloway and Long communicated

these facts in Taylorville to the sheriff and detectives working on the robbery. A little later, out of a bundle of photographs, Long identified some of the photographs as being of these men, and, particularly, the photograph of Lotsey. A few weeks after the robbery, a man by the name of Peg Lockard was arrested and confined in the county jail at Taylorville. This man made a confession of the robbery. A special grand jury was called and Lockard testified. His testimony also identified Lotsey as being one of the robbers. This man Lockard was subsequently murdered. All of the robbers had escaped and were at large for some time.

After securing the evidence of Lockard, positively identifying Lotsey as one of the robbers, the sheriff had circulars printed, and small photographs and descriptions, and the reward on cards, and sent them out to various state capitals and other large cities.

Some time in January, 1922, G. H. Hawkins, the appellant, who was then in charge of the delivery department of the American Railway Express Company at Atlanta, purchased a paper from a newsboy and observed the picture of Lotsey, with some statement as to a reward being offered, and being wanted for some crimes in Illinois. A short time after seeing this picture and notice of the reward, the man who was afterward identified as Lotsey appeared in the office of which Hawkins had charge in Atlanta, to claim a suit case sent by express from Chattanooga, Tennessee, to Atlanta, Georgia, addressed to John J. Ryan. Hawkins, to some extent, recognized the man claiming to be Ryan as being the man whose picture he had seen in a newspaper for whom a reward was offered. During a conversation with Lotsey, Hawkins learned that a trunk was also coming forward by express, which had not yet arrived, and Lotsey stated that he would call the next day for the trunk. In the meantime, Hawkins gave directions with reference to hold-

ing up the delivery of the trunk, and when it arrived, had the same locked up in a special room so that it could not be delivered without his presence.

Hawkins then went to the office of the United States Post Office Inspector, looked over the photographs of men wanted for crimes, and found a post card with a photograph of Lotsey. He then took up with the special agent's department of the American Railway Express Company the matter of having Lotsey arrested when he should call for the trunk. He interviewed special agents McGahee, Johnson and Quinn at different times. These special agents communicated with the police department and detective departments of Atlanta.

After three efforts to obtain help, two city detectives, by the names of Gillespie and Cowan, came to the department of Hawkins with special agent Quinn, and received a statement from Hawkins of his suspicions, his discovery and his recognition of Lotsey being the same person who was to call for the trunk under the name of Ryan. It was arranged between these two detectives and Hawkins that the trunk should be sent over to another department of the American Railway Express Company known as the "on hand" department. Hawkins agreed that he would send the trunk over and make arrangements with the head of the department there, who would station the detectives in a position where they could identify Lotsey and arrest him. To this they agreed, but informed Hawkins and special agent Quinn that it might be possible that they, themselves, could not be there to make the arrest, but that if they could not come they would arrange to have some one else present at two o'clock in the afternoon. Hawkins sent the trunk over and communicated with two of the officers of the Express Company at the "on hand" department, gave them full instructions about the trunk and the expected visit of the man Ryan and the intention to have detectives present to arrest him.

The trunk was sent over according to plans. Detectives Gillespie and Cowan did not appear. But the appellees, Hamilton and Hollingsworth, two city detectives in the police department of the City of Atlanta, appeared at the express office, were given instructions by the agent there in charge; the trunk was put in an upstairs department so as to make delay in making delivery, and the clerk at the delivery counter was given instructions with reference to procedure upon the arrival of Lotsey, traveling under the name of Ryan.

Lotsey called for the trunk. The clerk engaged him in conversation, and went upstairs and informed the detectives that their man was below; the detectives went down and arrested Lotsey, took him to the police station and locked him up. The following day the United States Post Office authorities caused to be issued a search warrant and the trunk was examined at the express office. In it was found the marriage certificate of Lotsey, some weapons, explosives and other burglar tools. When confronted with his marriage certificate, the man who had been maintaining his claim that he was John J. Ryan admitted to the detectives that he was Lotsey, and that he was wanted in Illinois, and was charged with being implicated in the Kincaid bank robbery. He was, also, as appears from the evidence, wanted in Edwardsville, Illinois, on a charge of post-office robbery.

After an interchange of telegrams between the police department of Atlanta and D. L. Dunbar, the then sheriff of Christian county, Illinois, the sheriff appeared in Atlanta on January 15, 1922, with necessary papers to take Lotsey back to Illinois. At the time Mr. Dunbar visited Atlanta, he told the appellees, Hamilton and Hollingsworth, about the reward which had been offered, and, also, furnished them with some of the circulars and printed matter with reference to the robbery and the reward.

Subsequently, Lotsey was tried in the circuit court of Christian county, convicted and sentenced to the penitentiary. Elwood Long appeared as a witness under subpoena, and testified as to the occurrences on the train the night of the robbery, and identified Lotsey as being one of the two men who boarded the train.

After the hearing, the circuit court entered a decree finding that Elwood Long was entitled to the reward individually, and that none of the other parties were entitled to any part or portion of the same; and to this decree, order and finding, exceptions were taken by the other appellees and this appeal perfected.

Appellees Hamilton and Hollingsworth have filed brief and argument jointly in this case on their own behalf, but we are unable to find that either of them has given a bond for appeal or made any assignment of error. Appellees—so-called in the brief, Hamilton and Hollingsworth—were granted the right, severally and jointly, with G. H. Hawkins, to appeal, the decree being against all and each of them, but from the record it appears that only Hawkins perfected his appeal. Hamilton and Hollingsworth, being police officers of the City of Atlanta, and having acted only in the line of their official duty in making the arrest of Lotsey in Atlanta and having no knowledge of the reward until the sheriff of Christian county arrived in Atlanta to take his prisoner to Illinois, it follows that neither of them could claim or recover the reward in this case. *Hogan v. Stophlet,* 179 Ill. 150; *Sallee v. Werner,* 171 Ill. App. 96, 100.

The laws of a foreign state, unless averred and proved as facts, are presumed to be the same as in this state. *Board of Trustees v. Railway Ticket Protective Bureau,* 175 Ill. App. 464. Under paragraph 3 of chapter 60, Cahill's Revised Statutes of Illinois, it becomes the duty of any officer of the law to arrest a fugitive from justice, even before the arrival of the governor's warrant, when a proper warrant is placed

in his hands, and if Hamilton and Hollingsworth did arrest Lotsey without a warrant, it did not change the nature of their official duty, or render them as acting in their private capacity. The laws of Georgia in this respect are presumed to be the same as the section of the act cited, *supra*, in force in Illinois.

A reward cannot be recovered by one who at the time he performed the services did not know that a reward had been offered. *Board of Trustees v. Railway Ticket Protective Bureau, supra; Williams v. West Chicago St. R. Co.*, 191 Ill. 610. In the latter case the court said:

"The right to recover a reward arises out of the contractual relation which exists between the person offering the reward and the claimant, which is implied by law by reason of the offer on the one hand and the performance of the service on the other, the reason of the rule being that the services of the claimant are rendered in consequence of the offered reward, from which an implied promise is raised on the part of the person offering the reward to pay him the amount thereof by reason of the performance by him of such service, and no such promise can be implied unless he knew at the time of the performance of the service that the reward had been offered, and in consideration thereof, and with a view to earning the same, rendered the service specified in such offer. *Fitch v. Snedaker, supra; Howlands v. Lounds,* 51 N. Y. 604; *Stamper v. Temple,* 6 Humph. (Tenn.) 113; 44 Am. Dec. 296.''

In addition, from a careful reading of the record, it appears that all of the services performed by Hamilton and Hollingsworth, including the arrest of Lotsey, were performed by them upon the orders of the police department of Atlanta, which received its information from and acted upon the suggestion of appellant Hawkins, who had set the trap to cause the arrest of Lotsey by the withholding of the trunk sent to Lotsey by express from Chattanooga, Tennessee.

Hamilton and Hollingsworth have no interest in the fund in question. The real contention in this case is between appellant Hawkins and appellee Long.

The reward was offered "for information leading to the arrest and conviction" of those who robbed the bank. Long furnished information as to two strange and suspicious characters taking a train in the night not far from the scene of the robbery. He did not know their names and had no knowledge or information as to the connection of either of them with the crime. He later identified a picture of Lotsey as one of the men who had boarded the train. This is in fact all the connection Long ever had in the matter, except to testify at the trial and state, as we assume, that the defendant Lotsey boarded his train on the night in question. Several weeks after this, one "Peg" Lockard, arrested and in jail in Christian county, furnished the first information the authorities had in regard to Lotsey. He stated that Lotsey was one of the bandits who robbed the bank. It is evident that Lockard's information and statement were correct and it is not questioned but that he knew whereof he spoke. The information furnished by Long was doubtless a clue, a suggestion or a suspicion that may have been an aid in commencing the search that finally resulted in the arrest of Lotsey, but we do not think, under the construction given by the courts to rewards of this nature, that it was information leading to the arrest and conviction of Lotsey. If Lotsey had been arrested and taken by Long, upon the information given, no crime or charge could have been lodged against the suspected person. Information alone does not entitle one to a reward offered for the apprehension and conviction of the guilty party, unless such information leads to the arrest and conviction. *Swanton v. Ost,* 74 Ill. App. 281, 284; *Shuey v. United States,* 92 U. S. 73, 23 L. Ed. 697; *Everman v. Hyman* (Ind. App.), 28 N. E. 1022; *Hogan v. Stophlet,* 179 Ill. 150; *Williams v.*

*West Chicago St. R. Co.,* 191 Ill. 610, 615. In the two last cases the reward was for the apprehension and conviction of the guilty parties, but both cases hold that the reward is an entirety and as such must be enforced or not at all.

It has been held that a claimant must not only show that he furnished information as to the identity of the criminal, but he must also prove that he was the first to give the information, and that the information given to the proper authorities was the active and efficient means of the apprehension of the criminal. *Williams v. West Chicago St. R. Co.,* 94 Ill. App. 385, 393; *Swanton v. Ost,* 74 Ill. App. 281, 284.

In *Williams v. West Chicago St. R. Co., supra,* (App. Ct.) it was held page 393:

"If the information furnished by him had been the means of discovering and arresting and convicting Mannow and Windrath, then, under the authority above considered, we would hold that plaintiff in error was entitled to the reward. And the fact that defendant in error had already paid the reward to another would be of no consequence as affecting the legal rights of plaintiff in error. Nor would we, in that event, regard the fact that plaintiff in error was in the employ of defendant in error when the service was rendered, as impairing his rights.  *  *  *

"But the difficulty is that the evidence is not such as to warrant the conclusion that the information furnished by plaintiff in error did lead to the arrest and conviction of Mannow and Windrath. Mannow was already under arrest when plaintiff in error first informed the police of his having seen two men near the barn. And the testimony of Jurs, which is uncontradicted, shows that Mannow was already under suspicion by reason of prior statements by him in reference to such robberies as the one committed at the time of the murder. Moreover, this previous statement of Mannow directed suspicion to Windrath. It was the testimony of Klatt and Schmitke which finally fastened the crime upon the accused. It can scarcely

be said either that the information given by plaintiff in error led to the discovery of Klatt and Schmitke as witnesses, or that the information led to the arrest and detention of the prisoners until the discovery of Klatt and Schmitke was effected.''

No arrest was made on the strength of Long's information and Long's information would not have been sufficient upon which a complaint could have been founded. The first information furnished was by Peg Lockard, but this information did not lead to an arrest or conviction of any of the parties participating in the crime and it is not the contention of any of the parties to this cause that Lockard's information was the active or efficient means leading to Lotsey's arrest and conviction.

Appellant Hawkins had seen a notice of the crime and reward, with a picture of Lotsey, in a newspaper. Later, a person whom Hawkins identified as Lotsey appeared at the express office and claimed a suit case under the name of Ryan. Hawkins at that time learned that Lotsey was also looking for a trunk to arrive at the same express office and it is shown by the great preponderance of the evidence that Hawkins set in motion the movements and laid the ''trap'' by means of which Lotsey was arrested and convicted, and in this whole matter at Atlanta, Hawkins was the guiding spirit and the whole affair was carried out as he planned it. There is some effort made by Hamilton and Hollingsworth to claim that they were acting independently of any information furnished by appellant Hawkins, and that information had come to the police headquarters of Atlanta from another source with which Hawkins had nothing to do, but the particulars of such information were not shown, Hamilton merely stating that an anonymous letter was received by the department which led them to believe that Lotsey was the man wanted, but the letter was not produced and their own testimony is that they

were working under superior officers of the police department with which Hawkins had communicated through the special agent of the express company.

Hamilton testifies that the trunk was pointed out by a clerk of the express company, which corroborates the testimony of appellant Hawkins.

In reading this entire record, the evidence seems to preponderate very strongly in favor of Hawkins' claim and establishes the fact that appellant Hawkins was the active, moving and efficient spirit who furnished the information that led to the arrest and conviction of Lotsey. It is true that Hawkins did not make the arrest, and the wording of the reward did not require the claimant to actually make the arrest, but where one furnishes information which leads to the arrest and conviction of the criminal, such person is entitled to the reward under the familiar maxim, *"qui facit per alium facit per se." County of Montgomery v. Robinson*, 85 Ill. 174.

The reward in this case should have been awarded to appellant G. H. Hawkins.

The decree of the lower court is therefore reversed and the cause remanded to the circuit court of Christian county with directions to modify the decree in accordance with the views set out in this opinion.

*Reversed and remanded with directions.*