DANIEL HOGAN

*v.*

LOREN D. STOPHLET.

*Opinion filed April 17, 1899.*

1. REWARDS—*reward for apprehension and conviction cannot be apportioned.* One seeking to recover the amount of a reward offered for the "apprehension and conviction" of a person committing a felony cannot recover for the apprehension alone.

2. SAME—*promise to pay officer for doing his duty is without consideration.* A promise to pay an officer a reward for doing what it is his duty to do under the law is without consideration.

3. SHERIFFS—*sheriff cannot recover reward for apprehension of criminal in his own county.* The compensation of a sheriff being prescribed by law it is against public policy to permit him to recover a reward for the apprehension in his own county of a person committing a felony there, although he exercises extraordinary diligence.

4. SAME—*sheriff not entitled to extra compensation for expenses not provided for by law.* That a sheriff may have incurred expenses in the performance of an official duty which are not covered by the legal fees he may charge does not entitle him to extra compensation.

*Stophlet* v. *Hogan,* 74 Ill. App. 631, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Alexander county; the Hon. CARROLL C. BOGGS, Judge, presiding.

This is a suit, originally brought by appellant against appellee before a justice of the peace of Pulaski county to recover a reward offered for the apprehension and conviction of a criminal. The justice of the peace rendered a judgment against appellee for $50.00, the amount of the reward offered by him, and costs. Appellee appealed from this judgment to the circuit court of Pulaski county, and the venue was changed to the circuit court of Alexander county. In the latter court the case was tried before the court by agreement without a jury, resulting in judgment against appellee for $50.00 and costs. An appeal was taken from this judgment to the Appellate

Court; and the latter court reversed the judgment of the circuit court with a finding of facts, and refused to remand the case to the circuit court. The Appellate Court has granted a certificate of importance. The present appeal is from the judgment of the Appellate Court.

The facts are substantially as follows: On the night of January 6, 1896, the storehouse of appellee in Mound City, was burned by an incendiary fire. On the next day appellee and several other citizens, including appellant, signed a paper publicly offering the amounts, set opposite their respective names, as a reward for the apprehension and conviction of the person, who burned the building. In March or April, 1896, one Harry Howard, who then and at the time of the burning was, and ever since has been, a resident of Pulaski county, was arrested in said county by one Lafayette Collins, a deputy sheriff of said county, on a warrant issued by a justice of the peace of the county, sworn out by one Mrs. Newman, charging Howard with burglary and larceny in breaking and entering her storehouse in said county. At the time the reward was offered and the arrest was made, and at the time of the conviction hereinafter mentioned, appellant was the sheriff of said Pulaski county, and Collins was his deputy. While Howard was in jail under the charge of burglary and larceny, he was indicted by the grand jury of Pulaski county for burning appellee's storehouse, and at the April term, 1896, of the circuit court of said county he was convicted of the crime of arson, and sentenced to the penitentiary therefor. After Howard was arrested and imprisoned in jail on the warrant, charging him with burglary and larceny, appellant claims to have expended certain moneys for traveling expenses, and fees paid to witnesses to procure their attendance from the State of Missouri, for the purpose of indicting and convicting Howard of burning appellee's building.

The following is the finding of facts made by the Appellate Court, as embodied in their judgment: "On

the night of January 6, 1896, appellant's store building at Mound City, Pulaski county, in this State, was feloniously set on fire and burned. The day following the fire appellant publicly and in writing offered a reward of $50.00 for the apprehension and conviction of the person or persons who committed the offense. About two months thereafter, appellee, who was the sheriff of Pulaski county, through one of his deputies, arrested Harry Howard, in said county (and who resided there) for the offense, and at the April term, A. D. 1896, of the circuit court of said county, Howard was indicted, tried, convicted and sentenced for the crime."

In the statement of facts which precedes their opinion the Appellate Court say: "The arrest was made under and by virtue of a warrant, issued by a justice of the peace of Pulaski county on the complaint of a Mrs. Newman, charging Howard with the crime of burglary and larceny, and Howard was committed to jail on this charge. The charge was mainly, if not entirely, for the purpose of holding Howard until the matter of the burning of appellant's store could be investigated." Upon the trial appellant, when on the witness stand, was asked the following question, and made the following answer: "State whether or not you did anything towards the apprehension or the conviction of any one in pursurance of the offering of this award?" "Yes, sir; after considerable effort on my part, I caused the arrest of this Harry Howard."

On the trial appellant requested the court to hold the following proposition as the law of the case: "The defendant requests the court to hold the law of this case to be, under the evidence in this case, the plaintiff is not entitled to recover, and the finding should be for the defendant." But the court refused to so hold, and the defendant took an exception.

L. M. BRADLEY, and WALL & BRISTOW, for appellant.

LANSDEN & LEEK, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The submission by the appellant to the trial court, to be marked "held" or "refused," of the proposition, that the finding in this case should be for the defendant, was in the nature of a demurrer to the evidence, and preserved for the court of review the question of law, whether the evidence tended to show a right to recover. (*First Nat. Bank* v. *Northwestern Nat. Bank,* 152 Ill. 296; *Smith* v. *Billings,* 169 id. 294).

The Appellate Court has found in its finding of facts, as embodied in its judgment, that the Harry Howard, who was arrested, was so arrested for the offense of setting on fire and burning the store building of appellee; and for the apprehension and conviction of the party committing this offense the reward was offered. The finding of facts, thus made by the Appellate Court, is binding upon this court; and whether the Appellate Court found the facts correctly, or not, cannot be considered on appeal in this court. (*Hawk* v. *Chicago, Burlington and Northern Railroad Co.* 147 Ill. 399; *Everts* v. *Lawther,* 165 id. 487). We deem it immaterial, however, whether Howard was originally arrested by the appellant and imprisoned upon a charge of burglary and larceny, or whether he was arrested for the burning of appellee's store building, so far as the determination of the questions involved in this case is concerned. The reward was offered for the apprehension and conviction of the person or persons, who burned or caused the building to be burned. It thus appears that the reward was offered, not for the conviction alone, but for the apprehension *and* conviction of the guilty party. Appellant is entitled to recover for both, or he cannot recover at all. The reward cannot be apportioned, that is to say, there can be no apportionment of it between what is due for the apprehension and what is due for the conviction. The offer must be enforced as an entirety, or not at all In *Pool* v. *City of Boston,* 5 Cush.

219, it was said: "The principal object of the reward offered was to obtain the detection of the offender; the conviction was required to ascertain who was the offender. But to entitle the plaintiff to the reward, he must show that he is so entitled, as well for the detection as for the conviction of the offender. The reward cannot be apportioned." (*Jones* v. *Phœnix Bank,* 8 N. Y. 228; *Blain* v. *Pacific Express Co.* 69 Tex. 74; *Furman* v. *Parke,* 21 N. J. L. 310).

The word "arrest" has been defined as "the apprehension or detaining of the person in order to be forthcoming to answer to an alleged or suspected crime. The word *arrest* is more properly used in civil cases, and *apprehension* in criminal." (*County of Montgomery* v. *Robinson,* 85 Ill. 174). Black, in his Law Dictionary, defines the word "apprehension" as follows: "The seizure, taking or arresting of a person on a criminal charge. The term 'apprehension' is applied exclusively to criminal cases, and 'arrest' to both civil and criminal cases."

If, therefore, the fact, that Howard was arrested upon a charge of burglary and larceny, should be held to negative the idea that he was arrested upon a charge of burning the building, then appellant did not secure the apprehension of the guilty party; and, in such case, he would not be entitled to the reward, as the reward was offered both for the apprehension and the conviction.

If, however, the appellant is to be regarded as having secured the apprehension of Howard for the offense of burning the building, in that case also he would not be entitled to the reward for the reasons hereinafter stated.

The appellant was the sheriff of Pulaski county. The arrest of Howard was made in Pulaski county, and for a felony committed by Howard in that county, Howard also being a resident of that county. It was, therefore, appellant's duty to make the arrest. That such was his duty will appear by reference to sections 1, 2, 3 and 4 of division 6, and sections 3 and 6 of division 7, of the Criminal Code, and sections 15, 16, 17 and 18 of chapter 125

of the Revised Statutes in regard to sheriffs. (1 Starr & Curt. Ann. Stat.—2d ed.—pp. 1374-1377; 3 id. p. 3769).

In addition to this, section 211 of division 1 of the Criminal Code provides that "if any judge, justice of the peace, sheriff, coroner, constable, police officer, clerk or other officer, State, county, town or municipal, executive, ministerial or judicial, shall willfully or corruptly receive or take any fee or reward to execute or do his duty as such officer, except such as is or shall be allowed by law, or if any such officer shall willfully or corruptly ask or demand as a condition precedent to the performance of his duty as such officer any fee or reward, except such as shall be allowed by law, every such officer so offending shall be fined not exceeding $200, and may be removed from office." Section 213 of division 1, provides that "if any officer authorized by law to charge or receive fees, salary or pay, shall charge, claim, demand or take any greater fee, salary, or pay, than such as is by law allowed to him for the service performed, or shall charge, claim, demand, or take any fee, salary or pay, or shall knowingly charge any fee, salary or pay, when no fee, salary or pay is allowed him by law, or when the services for which such fee, salary or pay is charged, have not been performed by him, or by some other person for him, he shall, on conviction under this section for the first offense, be fined in any sum not less than twenty-five dollars ($25.00), nor more than two hundred dollars ($200.00), and upon conviction for a second or any subsequent offense under this section, he shall forfeit his office, and shall be confined in the county jail not less than thirty days, nor more than one year." (1 Starr & Curt. Ann. Stat.—2d ed.—pp. 1329, 1330).

The constitution provides, that the sheriff and other officers shall "receive, as their only compensation for their services, salaries to be fixed by law, which shall in no case be as much as the lawful compensation of a judge of the circuit court of said county, and shall be paid, re-

spectively, only out of the fees of the office actually collected." (Const. art. 10, sec. 9). The legislature has fixed a scale of fees, which sheriffs are authorized to charge for services performed by them in the discharge of their official duty. (2 Starr & Curtis' Ann. Stat.—2d ed.— pp. 1911-1913).

It being true, that it was the official duty of the appellant, as sheriff, to make the arrest of the guilty party, and that the fees, which he is entitled to charge for the performance of his official duties, are fixed by law, it follows, upon well established principles, that the appellant was not entitled to the reward sued for in this case. It is against public policy to allow a man to recover a reward for doing his duty as a public officer. It is also against public policy, and illegal, for a sheriff to receive for services, for which fixed compensation is prescribed by law, any other or further fees, although extraordinary diligence may have been exercised by him in the discharge of his duty. (*Pool* v. *City of Boston*, 5 Cush. 219; Murfree on Sheriffs, sec. 1070). A promise to pay an officer a reward for doing what it is his duty to do under the law is a promise without any consideration to support it.

In *Matter of Russell's Application*, 51 Conn. 577, the facts showed, that an inhabitant of the city of Hartford, whose house was broken into in the night, offered a reward for the detection of the burglar; that certain policemen, during the hours allotted them for rest, discovered the burglar, and obtained information which led to his conviction; that policemen in that city were required by law to report all violations of law, and to arrest without warrant persons guilty of criminal offenses where the offenders were taken in the act, or on the speedy information of others; to render all possible assistance to the ministers of the law, and to exert themselves to prevent the commission of crime, etc.; and it was held by the court that to allow them to receive the reward would be both in violation of the city ordinances, and against public

policy. In that case the court said: "It has been held from a very early period, that a promise to pay an officer a sum of money for doing a thing, which the law will not suffer him to take anything for, is merely void, however freely and voluntarily it may appear to have been made. * * * And it is now well settled that a public officer, whose compensation is fixed or whose fees are prescribed by law, cannot legally contract for or demand a larger compensation or higher fees in the form of a reward or in any other form, for services rendered in the line or scope of his official duties."

In *Pool* v. *City of Boston, supra,* it was held, that a watchman of the city of Boston, who, while in the discharge of his duty as such, discovered a person setting fire to a building and prosecuted him to conviction, was not entitled to claim a reward offered by the city government for the detection and conviction of the incendiary.

In *Davis* v. *Burns,* 5 Allen, 349, it was held, that an officer of the customs of the United States, who found smuggled goods, while assisting the inspectors in charge of a vessel and examining the passengers and their luggage, although he was not in discharge of the specific duty assigned to him, could not maintain an action to recover a reward, offered by the owners of the vessel to any person giving information to their agents or officers of any goods smuggled or concealed or intended to be smuggled therefrom. In the latter case the decision of the court was put upon the broad ground of public policy which forbids an officer to receive extra compensation for doing what his official duty requires him to do.

In *St. Louis, Iron Mountain and Southern Railway Co.* v. *Grafton,* 51 Ark. 504, where certain parties, who acted as the *posse comitatus* of a sheriff to aid him in preventing interference with trains during a railroad strike, claimed a reward, offered by the railroad company for the arrest and conviction of persons thus offending, it was held that such parties were not entitled to the reward, al-

though they claimed to have acted as individuals, independently of the sheriff; and the court there say: "The policy of the law forbids a public officer, or those called to aid him in the discharge of a public duty, receiving any reward or compensation for his services outside of that allowed by law. The plaintiffs were assisting the sheriff's deputies—and, in fact, some of the plaintiffs were his regular deputies—in making these arrests and they were paid for their services as a sheriff's *posse* by Miller county. Public policy and the laws forbid that they receive other reward for the same. The rewards of officers are established by law; their services are to be performed for those legal rewards, and other private rewards for acts, which are required from them as public duties by the laws of their country and the obligations of their stations, must be regarded as corrupt and illegal exactions. * * * A promise of a reward for performing a duty is illegal and without consideration. * * * The statute makes it the duty of a sheriff to keep and preserve the peace of his county, for which purpose he is empowered to call to his aid such person or persons of his county as he deems necessary. The conclusion is, if the arrest is made by the sheriff, or his deputies, he or they were but doing their duty, and are not entitled to a reward."

In *Lees* v. *Colgan*, 120 Cal. 262, where a captain of police of the city and county of San Francisco apprehended a murderer in such city and county for a murder committed in another county, it was held that the captain made the arrest of the murderer in the line of his official duty and that it was against sound public policy to receive a reward offered by the government of the State for the arrest and conviction of the murderer; and in that case the court say: "The courts both in this country and in England are practically unanimous in declaring, that a public officer working for a fixed compensation, or whose fees are prescribed by law, cannot demand or contract

for a reward for services rendered in the line or scope of his official duty." (See, also, *Marking* v. *Needy & Hatch*, 8 Bush. 22; *Ex parte Gore*, 57 Miss. 251; *Monroe County* v. *Bell*, 18 So. Rep. 121; *Thornton* v. *Railway Co.* 42 Mo. App. 58; *Kick* v. *Merry*, 23 Mo. 74; *Weaver* v. *Whitney*, 1 Hopk. 13; *Hatch* v. *Mann*, 15 Wend. 45).

The claim, that extra services have been rendered, furnishes no warrant in such cases for the charge of extra compensation. In *Hatch* v. *Mann, supra*, it was said: "That a public officer, whose fees are prescribed by law, may maintain an action to recover an additional sum promised him by a party for doing his official duty, is a monstrous proposition, fraught with every kind of mischief. The pretense, that it is for extra services, would cover any conceivable corruption or extortion.    *   *   * If a constable for making extraordinary efforts to perform an ordinary official act, may not only receive, but may also collect by law a compensation beyond what the statute allows for the act, any other officer may do the same; and sheriffs, legislators and judges might, and soon would, put their 'extraordinary efforts' in the market, to be had by the highest bidder. This is a sickening and revolting view of the subject."   ·   ·

There are some decisions, which hold to the contrary of the views herein expressed, but these decisions will be found upon examination to be cases, where the officer arrested the offender beyond his territorial jurisdiction, or cases arising under particular statutes, which did not make it the duty of the officer to make the arrest. Many of these decisions are reviewed in the very able opinion, delivered by the Supreme Court of Connecticut *In the Matter of Russell's Application, supra*, and are there distinguished from such cases, as that which is presented by the present record.

The principles, announced by the authorities above referred to, have always been recognized as sound by this court. In *Stacy* v. *State Bank of Illinois*, 4 Scam. 91, the

bank offered a reward of $10,000.00 for the detection of the person, who had robbed a branch of the bank; and a director of the branch bank, who detected the robber, sued to recover the reward. But this court held, that he was not entitled to claim the reward upon the ground that it was his duty in such a case, whether he was paid for his services or not, if he obtained any information, which would in any manner lead to the recovery of the money taken, or the detection of the person taking it, to communicate it promptly to the bank without reward. We there say: "He has done nothing more in the present case than his duty as director imposed on him. The fact of his receiving no compensation for his services as director does not alter the case. He has voluntarily assumed the duties of the station, and he was bound to as faithfully discharge them, as if he was to be liberally paid for his services." The principle here announced has been applied to promises made to persons not public officers. Thus it was said by Chancellor Kent: "Every seaman is bound, from the nature and terms of his contract, to do his duty in the service to the utmost of his ability, and, therefore, a promise made by the master, when the ship is in distress, to pay extra wages, as an inducement to extraordinary exertion, is illegal and void." (*Pool* v. *City of Boston, supra*).

The fact, that the officer may have incurred expenses in the performance of an official duty, which are not covered by the legal fees he is authorized to charge, does not entitle him to extra compensation.

In *People* v. *Pearson*, 3 Scam. 270, we held, that a sheriff, who, in executing an attachment for contempt sued out of this court, went out of his own county and expended ten days' time, and $66.75 in money, in arresting and returning the defendant, was only entitled to recover the regular fees for serving the process and for mileage.

In *Irvin* v. *Alexander County*, 63 Ill. 528, where a statute provided, that counties shall pay the expense of convey-

ing insane paupers to the asylum for the insane, and fixed the compensation of the sheriff for such services, we held that the sheriff was not allowed to charge for his necessary expenses anything in addition to the mileage and per diem provided by the statute; and in that case we said: "The sheriff takes the office *cum onere;* and the General Assembly, in fixing the various items of fees for his compensation, may and very probably have fixed some items too low, but others are very high when time, labor and skill are considered. * * * We have never known a claim made for additional compensation, because the actual cost of serving a summons was more than the fees in a particular case, or, in fact, in any other specific service rendered by the sheriff. * * * If this were allowed, additional costs would have to be paid whenever the sheriff should lose money in the performance of any specific duty. * * * We are clearly of the opinion, that the sheriff was not entitled to his traveling expenses in addition to his mileage and per diem."

In *Hall* v. *Hamilton,* 74 Ill. 437, this court held that judges were authorized to hold branch courts for the superior court of Cook county or the circuit court for that or any other circuit, but that section 40 of the chapter, entitled "Courts," of the Revised Statutes of 1874, (p. 331), which provided for compensation being paid to a judge, holding a branch court out of his circuit, in addition to his salary, was unconstitutional and void. In *Hall* v. *Hamilton, supra,* this court, speaking through the late Mr. Chief Justice WALKER, said: "The fortieth section of that chapter provides for compensating judges, who shall hold court or a branch court for another judge out of his circuit or judicial district, by authorizing an appropriation of $10.00 per day to such judge out of the county treasury. The sixteenth section of the judiciary article of our constitution is this: 'From and after the adoption of this constitution, judges of the circuit courts shall receive a salary of $3000.00 per annum, payable quarterly, until

otherwise provided by law. And after their salaries shall be fixed by law, they shall not be increased or diminished during the terms, for which said judges shall be respectively elected; and from and after the adoption of this constitution no judge of the Supreme or circuit court shall receive any other compensation, perquisite or benefit, in any form whatsoever, nor perform any other than judicial duties, to which may belong any emoluments.' This language is as full, clear and comprehensive, as could well be conceived, to prevent supreme and circuit judges from receiving any other compensation than their salaries, under any name or pretense whatever, for the discharge of any duty pertaining to their offices. And it is prohibitory on the judges from receiving any compensation for the performance of such duties except their salary. It also prohibits the General Assembly from providing any other." Section 40 above referred to is still retained, and appears as section 23 of the act in regard to "Courts." It is as follows: "Where a judge shall hold court, or a branch thereof, for another judge out of his circuit or judicial district, as provided in the preceding section (except in cases of interchange with each other), it shall be competent for the county board of the county, in which he shall so hold court, in their discretion to cause him to be paid out of the county treasury not exceeding $10.00 per day for the time he shall so hold the same." Although this section still appears in the statute, yet this court, in the discharge of a high and solemn duty imposed upon it by the constitution, has decided such section to be unconstitutional, and, therefore, no board of county commissioners can lawfully pay, nor can any judge of a circuit court lawfully receive, the $10.00 per day, authorized to be paid by that section for the performance of judicial duties.

For the reasons above stated the judgment of the Appellate Court is affirmed.                *Judgment affirmed.*

Mr. JUSTICE BOGGS took no part in this decision.